IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CHERYL A. BURNS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 3:08-CV-190-PS |
| | ) |
| ORTHOTEK INC. EMPLOYEES PENSION | ) |
| PLAN AND TRUST, MATTHEW D. | ) |
| HUTCHESON, LLC, AS INDEPENDENT | ) |
| FIDUCIARY; MATTHEW D. HUTCHESON, | ) |
| INDIVIDUALLY, RICHARD D. BURNS, JR., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Dr. Richard Burns died and left his pension benefits to his three sons from his first marriage. Dr. Burns' widow, Cheryl Burns, thinks she should get the pension benefits. The administrators of the pension plan sided with the three sons because Mrs. Burns had signed a consent form whereby she agreed to give up her rights as beneficiary. This litigation followed pitting Mrs. Burns against the Orthotek Inc. Employees Pension Plan and Trust (the "Plan"). Both parties seek summary judgment. Because I find that the Plan did not abuse its discretion in honoring the consent form signed by Mrs. Burns, her motion for summary judgment [DE 39] is **DENIED** and the Plan's motion [DE 37] is **GRANTED**.

## I. BACKGROUND

Dr. Burns participated in Orthotek Inc.'s pension plan which was governed by ERISA, 29 U.S.C. §§1001 et seq. (March 21, 2008 Decision Letter, [DE 14-4 ] ¶ 10-12.) As principal shareholder, officer and sole director, Dr. Burns also acted as the Plan's Administrator and

Named Fiduciary. (*Id.*) Following his death on May 11, 2004, Dr. Burns' widow filed a claim with the Plan for her late husband's pension benefits. (*Id.* ¶ 2.) The Plan denied Mrs. Burns' claim. The Plan's final decision rejecting Mrs. Burns' claim is expressed in a thorough and well-reasoned eight-page letter dated March 21, 2008, authored by the Plan's Independent Fiduciary, Matthew Hutcheson. The final decision was issued after Mrs. Burns had a full opportunity to be heard in support of her claim. The Plan's decision sets out the findings of fact and legal conclusions on which the decision is based.

The Plan grounded its decision to deny Mrs. Burns' claim to Dr. Burns' pension benefits on her execution of several waiver forms in 2003. (*Id.* ¶¶18, 20, 39.) Three forms were executed by Dr. & Mrs. Burns on February 24 and 25, 2003. The first was their Election to Waive Joint and Survivor Annuity, waiving an annuity form of payment in favor of having the pension benefits paid in a series of installments. [DE 14-2, p.1]. Dr. Burns' signature on the form is dated February 24, and Mrs. Burns' signature on the spousal consent portion of the form is dated February 25. The second form is the Designation of Beneficiary Form, by which Dr. Burns expressed his intention to designate his three sons as the beneficiaries of his pension plan account. [DE 14-2, pp.2-3.] This form requires no signature of the participant's spouse, but contains several express reminders to Dr. Burns that the form is invalid without the consent of his spouse. The third form is for the purpose of such consent, and is called the Spousal Consent to the Designation of a Non-Spouse Beneficiary. [DE 14-2, p.4.] This form acknowledges Dr. Burns' execution of the Designation of Beneficiary Form the previous day, and is signed twice by Mrs. Burns, dated February 25, once signifying her consent to the sons being named as

beneficiaries in her place, and the second time as waiving the right to consent to any future changes of Dr. Burns' beneficiary designation.

The Plan contends that the Spousal Consent, supported by other Plan documents and the Burns' prenuptial agreement, establishes that Mrs. Burns waived her interest in the pension benefits. (Def.'s Br. [DE 38] at 14-18.) The forms in question contain what appear to be the signatures of Dr. Burns and Mrs. Burns. [DE 14-2]. Dr. Burns' signature appears in the blanks for "Participant's Signature," and each place where his signature appears is dated February 24, 2003. (*Id.*) Mrs. Burns' signature appears on the lines designated "Participant Spouse's Signature," and in each instance is dated February 25, 2003. (*Id.*) The signed forms contain no other signature blanks designated either for a notary or a plan representative. (*Id.*)

In her effort to escape the effect of the Spousal Consent form, Mrs. Burns alleged in her amended complaint, as she did in her administrative appeal of the Plan's denial of her claim, three things. First, that she has no recollection of ever signing the waiver. She does not claim that she did not sign the forms, only that she does not remember signing them. Second, Mrs. Burns contended that her rights and the purported waiver were never explained to her. Finally, she claimed that the forms were not witnessed as ERISA requires. (Amended Complaint [DE 14] ¶21.) At this stage in the proceedings, Mrs. Burns relies solely on the third contention – that the Spousal Consent is invalid because no one witnessed her signing it.[1]

---

[1] In her opposition to the Plan's motion for summary judgment, Mrs. Burns acknowledges that her three original contentions in effect form a single argument: "Separated from the fact the Form was never witnessed, these [other two] contentions are straw men the Pension Plan knocks down with ease." [DE 42, p.12.] Mrs. Burns agrees that "[t]he witness requirement is the point upon which the validity of the wavier (sic) turns[.]" *(Id.)*

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Though in this instance the parties do not disagree as to the underlying facts, they have come to different conclusions as to the proper beneficiary of Dr. Burns' pension plan. Primarily, they dispute whether the Spousal Consent constitutes a valid waiver pursuant to §205 of ERISA. But they also disagree as to the standard of review I should apply to the Plan's denial of Mrs. Burns' claim to benefits.

Generally, when reviewing an administrative denial of a claim for benefits under an ERISA pension plan, courts apply a *de novo* standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan unambiguously grants such discretion, the court is to use the deferential arbitrary and capricious, or abuse of discretion, standard. *Id*. at 111-14. *See also Wetzler v. Illinois CPA Soc. & Foundation Retirement Income Plan*, 586 F.3d 1053, 1057 (7th Cir. 2009).

Section 12.5 of the Plan's primary authorizing document provides: "To the extent permitted by law, any interpretation of the Plan and any decision on any matter within the Plan Administrator's or Named Fiduciary's ***discretion*** made in good faith, is binding on all persons." (Plan [DE 38-2] at 73 of 96) (emphasis added). Also, Article 10.6 of the plan vests the Trustee with the power to:

> [E]xercise any of the powers and rights of an individual owner with respect to any property of the Trust Fund and to do all other acts in its judgment necessary or

desirable for the proper administration of the Trust Fund, although the power to perform such acts is not specifically set forth herein.

(*Id.* at 72 of 96.)

Dr. Burns acted as both Plan Administrator and the Named Fiduciary for the Plan. Following his death, the Board of Directors of Orthotek, Inc., by way of dissolving the corporation, vested authority in Hamilton Hutcheson, LLC ("HHLLC") to determine Plan benefits and distribute assets. (Written Consent [DE 38-2] at 81-82 of 96.) Paragraph 3 of the authorizing document authorizes HHLLC to "perform any and all other acts and things necessary in the exclusive *discretion* of HHLLC, to accomplish the tasks defined herein and reasonably contemplated hereby." (*Id.*) (emphasis added).

Based on the language of the original Plan document as well as the Written Consent, which vests authority in HHLLC as independent fiduciary, I am convinced that the Plan Administrator and Named Fiduciary here had discretionary authority. "In the event that the administrator's discretion is unrestrained or limited only by the requirement of good faith, the arbitrary and capricious standard is proper." *Loyola Univ. of Chicago v. Humana Ins. Co.*, 996 F.2d 895, 898 (7th Cir. 1993). *See also Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund*, 900 F.2d 1138, 1142 (7th Cir. 1990) (noting that the arbitrary and capricious standard is appropriate where discretion is limited only by good faith).

However, I do recognize that under the arbitrary and capricious standard courts may overturn an administrative decision when the "decision was (1) without reason, (2) unsupported by substantial evidence, or (3) erroneous as a matter of law." *Manny v. Central States, Southeast and Southwest Areas Health and Pension Funds*, 2004 WL 542522, at *3 (N.D.Ill. Mar. 17, 2004) (quoting *Udoni v. Department Store Div. of Dayton Hudson Corp.*, 1996 WL 332717, at

*2 (N.D.Ill. June 13, 1996)). *See also Hobson v. Metropolitan Life Ins. Co.*, 574 F.3d 75, 83 (2d Cir. 2009); *Pagan v. Nynex Pension Plan*, 52 F.3d 438 (2d. Cir. 1995); *Abnathya v. Hoffman-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993). Further, "if fiduciaries or administrators of an ERISA plan controvert the plain meaning of a plan, their actions are arbitrary and capricious." *Swaback v. American Information Technologies Corp.*, 103 F.3d 535, 540 (7th Cir. 1996). So even though the arbitrary and capricious standard does apply here, the Plan's decision may be overturned if it is erroneous as a matter of law or controverts the plain meaning of the plan's terms. Although the parties disagree as to the applicable standard of review, each party believes it prevails under either standard, and the Court agrees that its conclusion would be the same under either standard.

The default position under ERISA is that – following the death of a participant – pensions benefits "shall be provided to the surviving spouse of such participant." ERISA §205, 29 U.S.C. §1055(a). However, a plan participant may elect to designate someone other than the surviving spouse if the proper consent and waiver requirements are satisfied. ERISA §205(c)(1), 29 U.S.C. §1055(c)(1). A spouse's waiver of his or her rights to benefits is effective if:

> (i) the spouse of the participant consents in writing to such election, (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public.

ERISA §205(c)(2)(A), 29 U.S.C. §1055(c)(2)(A). This language is repeated nearly verbatim in Section 16.5 of the Orthotek's Plan. *See* Plan [DE 38-1] at 75-76 of 96.

The parties do not dispute that this is a relevant pension plan, or that § 205 of ERISA applies. The only issue in dispute is whether the third element – that "the spouse's consent

acknowledges the effect of such election *and is witnessed by a plan representative or a notary public*" – is satisfied here. ERISA §205(c)(2)(A)(iii), 29 U.S.C. §1055(c)(2)(A)(iii) (emphasis added).

Here the Plan itself recited the requirements of the statute, but Orthotek removed the notary signature block from the forms that Orthotek got from an outside ERISA plan consultant.[2] The plan administrator thus followed the forms in Dr. Burns' file in denying Mrs. Burns the benefits. The question thus becomes whether the forms are a nullity because they fail to comply with ERISA's requirements.

Mrs. Burns cites *Kennedy v. Plan Administrator for DuPont Savings and Investment Plan*, 129 S.Ct. 865 (2009), for the proposition that the administrator is obligated to pay the benefits in conformity with plan documents (without resort to external documents). But because the Plan's documents *did* contain Mrs. Burns' consent to her husband's change of beneficiary designation, she must mean that the Plan must pay benefits only in accordance with documents *in proper order* and *must ignore* documents that are defective in some way, even if the defect is the Plan's own and not the signers'. The Plan aptly responds by suggesting that Mrs. Burns' arguments about the documents' deficiency would apply to her signature on many more documents, none of which had a separate witness or notary signature either. These include the Election to Waive Joint and Survivor Annuity in favor of benefits paid in a series of installments (signed by Dr. and Mrs. Burns at the same time they signed the forms for the change of beneficiary to the doctor's sons) and some 30 forms by which, during his lifetime, Dr. Burns

---

[2] Mrs. Burns asserts, without citation to evidence in support, that the Spousal Consent was modified from the version of the form provided to Orthotek by plan sponsor Collier, Sarner Associates, Inc. [DE 40, p.3].

sought and received disbursements of funds from his pension plan, which also required spousal consent.

No case law presenting entirely analogous circumstances has been cited by the parties or unearthed by my research, but guiding principles can be gleaned from a number of cases. In *Butler v. Encyclopedia Brittanica, Inc.*, 41 F.3d 285 (7th Cir. 1994), the Seventh Circuit upheld the plan administrator's determination to pay benefits based on a spousal waiver where the spouse challenged the form's validity. The widower acknowledged the validity of his signature on the form but claimed that he had not signed in the physical presence of the notary who notarized his signature. The Court of Appeals affirmed the district court, which had concluded that "the purposes of the statute are satisfied where the spouse does not dispute his signature on the form, but signed it outside the presence of any notary public or plan representative." *Id*. at 293, quoting *Butler*, 843 F.Supp. at 396. The Seventh Circuit considered the purpose of the statutory "witness" requirement simply one of certifying the validity of the signature, and not to "require the notary or plan representative to question whether a spouse fully understands the effect of what he or she is signing or otherwise attempt to ensure that a spouse has made an informed and knowing consent." *Butler*, 41 F.3d at 294. The court ultimately ruled against the widower because he was unable effectively to challenge the notary's validation of his signature, and the court therefore did not have to determine whether or not to apply a substantial compliance doctrine. Similar to the widower in *Butler*, Mrs. Burns offers no direct challenge to the authenticity of her signature on any Plan document.

As mentioned above, Mrs. Burns repeatedly invokes the United States Supreme Court's recent decision in *Kennedy*, 129 S.Ct. 865 (2009). There the Supreme Court held that where an

8

ex-wife had been properly designated a beneficiary on plan forms, the plan administrator properly followed that designation and paid the benefits to her after the husband/participant's death, even though the couple's divorce decree had divested her of all such employment benefits. The Court found that the administrator had done its "statutory ERISA duty by paying the benefits to [the ex-wife] in conformity with the plan documents." *Id*. at 875. Although not directly on point with this case, *Kennedy*'s general tenor is a reinforcement of the "plan documents rule," that is, that "the plan administrator is obliged to act 'in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of...[ERISA].'" *Id*., quoting 29 U.S.C. §1104(a)(1)(D). The Supreme Court noted that its decision expresses no view regarding situations where the terms of a plan fail to conform to the requirements of ERISA and a party seeks to recover under the terms of the statute. *Id*., n.11.

More recently, in a case involving equitable reformation of an error in an ERISA plan, a district court reviewed the *Kennedy* decision and noted that it "held only that a non-plan document cannot override a plan document" and "thus leaves open the question of what to do when a plan document contains a drafting error." *Young v. Verizon's Bell Atlantic Cash Balance Plan*, __ F.Supp.2d __, 2009 WL 3677350, *40 (Nov. 2, 2009). In my view, because of *Kennedy*'s own express limitations, it does not have direct application to the case before me. If anything, it tends to support the Plan's action, which after all was in accordance with the forms it had accepted for filing.

More relevant are a pair of Seventh Circuit cases decided in 2002 applying a substantial compliance doctrine in an ERISA context. In *Metropolitan Life Insurance Company v. Johnson*,

9

297 F.3d 558 (7th Cir. 2002), the court reviewed a life insurance plan participant's designation of beneficiary form and determined that, despite its several clear errors, the form evidenced the participant's intention to make a change of beneficiary. Further, because the participant had attempted to effectuate the change by undertaking positive action similar to the action full compliance required, the defective designation was valid under the federal common law doctrine of substantial compliance. In *Davis v. Combes*, 294 F.3d 931 (7th Cir. 2002), the life insurance plan participant filled out a change of beneficiary form, but failed to sign and date the form, which was nonetheless received and entered into the Plan's files. The Seventh Circuit held that the form exhibited substantial compliance as it "unequivocally establish[ed] that the policy holder intended to make the new beneficiary designation and took positive action to effectuate that intent." *Id*. at 942. The form was therefore treated as valid and effective. *Johnson* and *Davis* suggest that the substantial compliance doctrine applies under federal common law "for issues on which ERISA does not speak directly." *Id*. at 940; *Johnson*, 297 F.3d at 566-67.

      It seems to me that if the absence of *any* signature can be construed as being in substantial compliance with ERISA, as was the case in *Davis*, then a spouse's signature albeit without the statutorily required witness certainly amounts to substantial compliance as well. Also, *Johnson* and *Davis* are more difficult cases because they involve defective *completion* of the form, rather than a defect *in the form itself*. When there is an inaccuracy in the form itself, it's even more sensible to give effect to the form because the error (if any) cannot be attributed to the plan participant or spouse who signed the form. The statutory requirements and the "plan documents rule" are intended to keep ERISA plan administrators from having to struggle with home-made attempts to waive benefits or change beneficiaries. But here the Plan itself was

responsible for its forms not containing a witness signature, and these were the forms the Plan would require any participant to use.[3] They cannot simply be ignored. Where (as here) there is no substantial question that the forms were signed by competent adults, Dr. And Mrs. Burns' clear expression of intent be cannot be disregarded just because the Plan had faulty forms.

### III.  CONCLUSION

The Plan correctly concluded that Dr. Burns' designation of beneficiary in favor of his sons, for which Mrs. Burns signed the required Spousal Consent, should be given effect. Much like the widower in *Butler*, the widow here tries to disavow her consent on a technicality, and essentially to treat her waiver as voidable because the Plan's form was defective. There is no question what the intention of Dr. Burns was as plan participant, and no substantial question that Mrs. Burns signed the Spousal Consent to his designation of other beneficiaries. Orthotek's motion for summary judgment [DE 37] is therefore **GRANTED,** and Mrs. Burns' motion for summary judgment [DE 39] is **DENIED**.

The Clerk shall enter judgment in conformity with this ruling.

**SO ORDERED.**

Entered: February __10__, 2010

                                              s/ Philip P. Simon
                                              PHILIP P. SIMON, CHIEF JUDGE
                                              UNITED STATES DISTRICT COURT

---

[3] See §7.13 Designation of Beneficiary; Qualified Election, ORT 1.0118 [Exh. A to DE 38, p. 68 of 96].